Our last case this morning is Richard Graham v. Reaper Solutions v. Deere & Company, 2024-1598. Mr. Young. Good morning and thank you, Your Honors. May it please the Court, the District Court erred by finding Claim 12 of the 395 patent indefinite due to the lack of disclosed algorithm of the control means limitation. The District Court's findings were based on two overriding errors. First, the District Court erred by reading in an unclaimed function of controlling lateral position of the corn header and subsequently limiting corresponding structure to Dilematic No. 2, which includes a microprocessor and also is capable of performing the unclaimed function. Simultaneously, the District Court excluded Dilematic No. 1, which does not include a microprocessor but is capable of performing the claimed function. The Court's second error occurred when it failed to recognize that a person of ordinary skill in the art would have understood the specification to disclose a three-step prose algorithm for the Dilematic No. 2. The means plus function claim of Claim 12, or limitation of Claim 12 rather, recites a control means for raising or lowering the header in accordance with said first signal in maintaining the header a designated height above the soil. I will refer to this as the claimed function. The District Court was aware of the correct means plus function claim construction methodology in this case, and it cited Williamson, including for its recognition that the means plus function claim covers only the structure corresponding to the claimed function. The District Court also understood that it should first identify the claimed function and then identify what structure, if any, corresponds to it. You're no longer arguing that the District Court erred by conducting the means plus function out of order, correct? Is that still your argument? We understand that the Court understood the order. We believe that the Court misapplied the order in which it should have applied those steps, and that's demonstrated by the fact that the Court's first focus was on identifying a specific commercially available structure that had the capacity to control lateral position. If it had gone through the correct steps, it would have looked for and identified the claims function first. Go to a specific JA page where you contend that the Court erred in terms of its application steps. Yeah, absolutely. Appendix 30 is the primary page. On Appendix 30, the Court eliminated Dilematic No. 1 because it lacks the capacity to control lateral position, whereas Version No. 2 does not. And the District Court's order hinged on that finding. That passage was very consequential because it limited the scope of the corresponding structure, which then paved the way for the Court's indefiniteness finding. But the District Court was informed through the testimony of appellant expert Mr. Smith that a person of ordinary skill in the art would have understood that Deere, John Deere sold combines incorporating two types of head controllers, exemplified by Dilematic No. 1 and Dilematic No. 2. Let me take a step back here. Did the parties agree, in my understanding they did, that control means is a means plus function term? Correct. Yeah. And did the parties also agree on the corresponding structure? I think that you indicated that in your briefing, that at least the parties, I'm taking this separate, I'm stepping away from what the Court did, but did the parties also agree on the corresponding structure? Yes. Yes, Your Honor. The parties agreed that there was a controller interface, a head controller, and a hydraulic control means or system. Okay. So what do you contend is the proper corresponding structure to the right function here for this limitation that is in dispute? All three of those, but in particular, the dispute in this case is focused on the head controller. And the dispute is focused on the head controller because the patent specification specifically refers to deer controllers or controllers on deer combines. A person of ordinary skill in the art understood at the time of the patent that there were two different types of deer controllers, one of which consisted generally of circuitry and a relay, the other of which consisted generally of circuitry and a microprocessor in place of a relay. If you don't mind. So you maintain that the disclosure in the patent concerning the lateral position does not disqualify that from being structure supporting the claim? The requirement or the language about controlling lateral position has no relevance to determining what structure performs the claimed function.  Maybe just taking a step back, what do you contend is the right function? And why don't you walk us through briefly where we can see the support for that being the correct function here? Yeah. The correct function, the claimed function is for raising or lowering the header in accordance with said first signal in maintaining the header at designated height above the soil. And that can be found in Claim 12, Column 8, Lines 51 through 53. Which column? Column 8. Claim 12, Column 8, Lines 51 through 53, I believe. So when a person of ordinary skill in the art understands that there are two types of deer head controllers, they understood that that was exemplified by dielmatic number one and dielmatic number two. As I mentioned before, dielmatic number one consisted primarily of circuitry with a relay. Dielmatic number two consisted primarily of circuitry with a microprocessor in place of the relay. Now, it's undisputed in this case that both versions one and versions two perform the claimed function of raising or lowering the header. Mr. Smith testified that version one is corresponding structure for the claimed function, and his testimony was unrebutted. Deer's fact witness, Dr. Miller, also acknowledged this much, stating that dielmatic one, quote, controls the height of header above the ground. And that can be found at Appendix 2474, Paragraph 8. Now, just for semantics purposes, when you're referring to version one, that's the same as dielmatic one? Yes, yes. So dielmatic number one, version one, dielmatic number two, version two. I apologize for the confusion there. I just wanted to make sure we're all on the same page. No, understood, understood. Now, notwithstanding the evidence before the court, the district court determined that the corresponding structure was limited only to dielmatic number two because of its capacity for controlling lateral position. But two and three required algorithms, right? Two and three both include our microprocessor-based. Right. So, yes, because they have microprocessors instead of circuitry, yes, they do require algorithms. They were not adequate structure, supporting structure for the means clause. So you relegated to one, right? No, they are adequate structure because a person of ordinary skill in the art would have understood the specification disclosed as an algorithm, a prose algorithm, a three-step prose algorithm, which provides the algorithm necessary for two and three. But that's not what the court decided, right? Correct. The court did not decide that. In fact, the court decided the contrary. The court did decide the contrary, and in doing so, the court applied the wrong law or incorrect law, I should say. This court issued its SysVel decision in early October of 2023. Appellants promptly provided that decision to the court. Let's go back to what you were talking about with Judge Moore. So the district court erred by adding structure that was not necessary in order to perform the claim function. That's correct, and that narrowed the scope of corresponding structure. And you claim that that was the error. The addition of additional structure.  The controlling lateral position language does not come from the claim. It only comes from the specification, and it comes up one time. The claim function has to be determined based on what is recited in the claim. By virtue of adding in controlling lateral position, the court effectively failed to perform the first step properly. And if we were to agree with that position, what's the impact on the remainder of the case? Is that dispositive? The case has to go back. Yes, the claim construction has to be fixed, and you have to vacate the indefiniteness finding. I think just as a follow-up to Judge Rayna's question, there are a series of issues that were raised here. If we were to agree with you that the district court erred in terms of adding in this additional function, which then had some impact potentially on the corresponding structure, which of the various issues that you raised do we actually need to decide here? We need to examine the court's claim construction, which was incorrect in this case for the reasons I've identified. It failed to properly identify the claims function and added in an unclaimed function of controlling lateral position. In addition to that, that impacted what embodiments were included within the scope of corresponding structure. Scope of corresponding structure should have included dilemmatic one, which does not include a microprocessor and therefore does not require an algorithm, as well as dilemmatic number two, which does include a microprocessor and therefore requires an algorithm. But the algorithm is there as a three-step algorithm in the specification, and that's noted by appellant's expert, Mr. Smith. Which issues potentially do we not need to reach if we agree with you that there was an error in the claim construction? Are there certain issues that we wouldn't have to reach as a consequence of that is my question to you. I think if you reach those issues, that's at the core of everything that we've raised here, is basically the court's failure to apply black-letter law when it comes to means-plus-function claim construction. Now I mentioned earlier that the court misapplied or failed to apply the proper case law with respect to Mr. Smith's description of the algorithm in this case. The SysVel court applies here, and it came out about a month before the court issued its claim construction order. We provided a copy of that to the court immediately. The SysVel court decision explains that when a specification includes some structure, like this one does, then the rule corresponding to NOAA Group 2 applies, meaning the specification need not disclose all of the details of the algorithm. The court further provided that an expert may testify about what the disclosures in the specification would have meant to a skilled artisan. Ultimately, the district court did not apply SysVel, and thus it did not recognize that the specification need not disclose all the details of the algorithm to satisfy the definiteness requirement, so long as what is disclosed would have been sufficiently definite to a skilled artisan. Is this patent expired? I'm sorry, what's that, Your Honor? Is this patent expired? It has, yes. Is there other litigation going on? No, this is the only litigation. The district court... You're into your rebuttal time. You can continue or save it as you wish. I'll save it. Thank you, Your Honor. Ms. Liddickson. Thank you, Your Honor. May it please the Court, Laura Liddickson for Deere and Company. The Court should not lose sight here of the ultimate question, which is whether the 395 patent meets the quid pro quo for means plus function claiming by disclosing adequate structure clearly linked to the claimed control means. The answer to that question is simple. It does not. The district court here correctly found that Claim 12 and its dependents fail to meet that quid pro quo based on its findings, first, that the 395 patent specification does not disclose, describe, discuss the dilemmatic number one controller and that the specification does not provide any disclosure of an algorithm. I want to start with the argument that Reapers Counsel makes about the district court's process in identifying the function and the structure. To Your Honor's question, Judge Reyna, the district court did apply the process in the correct order. The only thing that appears in the district court's decision before its identification of the claimed function is a summary of the party's arguments. Then on appendix page 29, the district court recites the function straight from the claim. Nowhere in the subsequent pages of its opinion or before that does the district court go through a claim construction analysis or otherwise limit that function. The place where this lateral... There's no claim construction issue in this case. Well, no. The means plus function, identifying the function and the structure is a claim construction issue. But the district court got the function part right. It's stated correctly in the district court's opinion. It never revisited that. The place where this lateral positioning capacity comes up is in the identification of the structure. And the district court, when it discussed that lateral positioning capacity, it was not in the context of rewriting the function. And I think it's helpful to kind of step back and look at what the district court did here and the process that she went through. She started with the claim function, and then Reapers Counsel identified this passage of the specification at column 3, lines 33 through 52 as being the key passage with the corresponding structure. And in there is where you see this reference to a controller. But there's no description in that passage of what that controller consists of. It doesn't tell you what the parts are. It doesn't say whether it's a microprocessor. It doesn't say circuitry, unlike the CISFL case that they cite. It doesn't even mention software. You're saying the reference to the word lateral is irrelevant? Well, it's not irrelevant. It was a clue for the district court when it got to the end of that passage. So Reaper knew it had a problem with the word controller, right, Your Honor? Because it was too vague. So they said this controller is actually a controller as in a deer combine based on the very last sentence of that passage. So then the district court said, okay, well, that narrows the field for me. I'm down to three controllers because they're looking at Dr. Miller's declaration. He's a retired deer engineer. There were three deer head controllers available in 1997. Now I need to figure out which one it is because this court's precedent in Ergo v. Carefusion says just getting it down to three isn't enough. Just saying it's something known in the art and it could be any one of three options doesn't get you there in terms of the quid pro quo of means plus function claiming. You need to have some direction. So the district court did everything in her power to give Reaper the benefit of the doubt, and she went back to that passage, the one that's identified as the relevant passage, and looked for clues as to which controller was being referenced. And when she read it, it says that the controller, that key sentence, this is the sentence that supposedly does the clearly linking too, says that the controller, the deer controller referenced later, is one that has the capacity to do lateral positioning as well as height control. And so she knew from that passage that the controller referenced later, the one that Reaper said was the clearly linked structure, had to be something other than the dilemmatic number one because all of the evidence before her showed that the dilemmatic number one didn't have that capacity. But is that lateral positioning even necessary to the function of the claim limitation dispute here? No, it's not, Your Honor, but that's a different question. Judge Ebinger never got to the point of identifying the structure because the algorithm requirement came in first. So had she found that it was the dilemmatic number one and had to go to the process of which structure is necessary to perform the claim function, perhaps parsing which components of the dilemmatic number one that would be, that's where that would come in. But she didn't even get there because once it was... Wasn't part of the reason she concluded it couldn't be dilemmatic version number one is because of the controlling the lateral position statements in the specification that she seemed to be pointing to in her decision? Yes, Your Honor, she did look at that, but it's a clue as to which controller is referenced at the end. If I might use an analogy, like let's say it didn't say lateral positioning here. Let's say it actually said microprocessor. The controller uses the microprocessor to adjust header height. We would be talking about something that's more of a structure, right? I think the confusion comes up because the lateral positioning does have this functional feel to it, but she didn't actually import a function in. She was just looking at that lateral positioning capacity as a clue. Wouldn't you agree that the claim language itself does not mention or claim this last corresponding structure of the lateral part? The claim language does not... In the functional language in the claim does not use the phrase lateral positioning. You're correct, Your Honor. But she did not import that in. She just looked at that capacity as a clue as to which combine controller headers were being referenced later in the passage. But when she included that, then that affects the clock one, clock two descriptions. I'm sorry, Your Honor. It affects the... No, go ahead. Go ahead. I would really like to answer your question. It does affect which dialematic controllers were envisioned by this passage. But understand also that she was... Judge Ebinger was giving Reaper the benefit of the doubt. If all the passage said was three deer combines without any identification of which one was being referenced, we would be in exactly the same position as ergo be carefusion. There, the claim term at issue, just like this one, was control means. And the patentee pointed to the specification where it referenced the clearly linked structure as a controller, exactly the same. And the patentee had evidence from an expert that there were three potential controllers out there that were known in the art. Precisely the same facts we would have here if the district court hadn't done that additional inquiry to try to figure out which controller was being referenced in that passage. And these are not three controllers that are... Do you agree that the right claimed function here is what I think you point us to on appendix page 29, raising and lowering the header in accordance with said first signal and maintaining the header at designated height above the soil? It is. That is the claim function. And that's exactly what the district court applied here. She did not read in lateral positioning capacity into that function. Could that function be controlled or completed by the dilemmatic version number one? Could that function be the... Could you repeat that, Your Honor? I'm sorry. Could that function be controlled by circuitry in dilemmatic version number one? Possibly, but there's not clear evidence of the record of that. So Dr. Miller does say that the dilemmatic number one does header height, but he never goes through and does a claim analysis where he says... He wasn't presented as an expert. He was a fact witness. And so he just went through and said what it does. He didn't actually go to the claim function and provide testimony as to whether it meets that function as stated in the claim. And there's more words in that function than just height control, although that's the key one. But possibly, yes, we would... If Your Honors were to reverse, we would need to go back and look at that question with the district court. But I think there's another impediment to reversing, which is the fact that if Your Honors don't accept the proposition that it's... It excludes dilemmatic number one, that there's some guidance as to which one of these deer combine controllers is referenced in the passage, we're in exactly the same boat as ergo, which the district court gave reaper the benefit of the doubt on. If there are no more questions on the function aspect, I'd like to turn to the algorithm. So the district court made a correct set of findings here that the specification of the 395 patent does not disclose an algorithm corresponding to the dilemmatic two or three. That finding is based on not just the patent itself, but also testimony from Dr. Miller, the retired deer engineer, and the source code for the dilemmatic two and three, which were attached to Dr. Miller's declaration. In doing so, she also looked at Mr. Smith's declaration, and rejected the prose algorithm in there. And that finding was not in clear error. In fact, Dr. Smith's prose algorithm, if you line it up side by side the way that Reaper does in the reply brief with the Finisar case, you'll find that there are even fewer words, phrases, different between that prose algorithm and the claimed function here. And on top of that, the district court correctly found that step two of Mr. Smith's alleged prose algorithm finds no corollary in the specification at all. That prose algorithm is based on piecing together different parts of the specification, and a phrase from the claim itself that has no corollary. The notion that the quid pro quo for means plus function claiming was met here with an algorithm that has to be pieced together by an expert using disparate parts of the specification and the claim, it's just incorrect. During Mr. Young's argument, he referenced the Sisville case. I want to just correct one thing about that case. In that case, this court remanded for determination of whether or not there was structure because a reference to software in the specification was a sufficient hook to make the expert declarations relevant. That's not the case here. The district court did look at the expert declarations. She did make fact findings based on those rather than deciding on the patent itself. So it's a different situation. And then, Judge Reyna, to answer, are there any further questions on the algorithm? No. Okay. I wanted to go back to the question that you asked, Judge Reyna, which was about whether there was any addition of structure by the district court's finding here with respect to the lateral capacity. And again, the district court never got to the point of determining which structure was necessary to perform the claim function because the algorithm requirement was triggered, and therefore, there was no reason to go on to the structure analysis beyond that. So once you got to the algorithm requirement, the claim was indefinite, and there was no further to go. If we were to find that the court added structure beyond that's necessary to the claim function, then isn't it ergo that that impacts the algorithm analysis? The algorithm analysis is separate from that. It's a predicate step before you get to... But it's been reduced now to dilemmatic one and dilemmatic two. The addition of additional structure impacts the dilemmatic analysis or the algorithm analysis. If the district court had... I think your question, Your Honor, is that if the district court had added additional structure, would it impact the analysis? It would, but the district court never got to that point. She just determined that the dilemmatic referenced in column 3 could not be the dilemmatic number 1. Therefore, it was a dilemmatic 2 or 3, both of which required an algorithm. One other issue that I think Your Honor would need to grapple with if you were to agree with Reber's counsel that 1, 2, and 3 are all covered by this claim is that this precedent that they cite for the notion that if you have one structure that's got an algorithm and a second structure that doesn't, and that somehow meets the definiteness requirement in the quid pro quo, that all predates Nautilus. I don't think Your Honors need to get to that question, but if there are three structures disclosed in the specification and two of them are indefinite and vague, that is a problem under Nautilus because the person of ordinary skill cannot determine with reasonable certainty what the scope of the claim is because they have to determine the equivalence thereof for each of those structures. But just like Judge Ebinger, there's no reason to get there because either this claim is invalid under ergo or if you get to the point of figuring out which dilemmatic is covered, it's not the dilemmatic number one, it's the dilemmatic two or three, and those both clearly trigger the algorithm requirement and there's no algorithm here. If you were considering a dilemmatic one in a vacuum, then there would be no triggering of the algorithm requirement, right? There's no requirement for an algorithm if you only have dilemmatic one. That's not true, Your Honor. A dilemmatic is only circuitry and a relay. It's not a processor. It's not a microprocessor, but the testimony in the record, if you look at Appendix 578, this is from the Indiana briefing. It's not a processor like dilemmatic two. It's not a microprocessor, but Dr. Lucas' testimony was that even though it was circuitry, it did implicate an algorithm, and you can look at Appendix 578 for that discussion, but that wasn't the focus in the Iowa court because there was this other problem with the dilemmatic number two and three, and there are many problems with this patent. I want to just leave you with the ultimate question, which is whether the quid pro quo for means plus function claiming was met with the 395 patent, and there are many aspects of this patent that are vague. The district court here was methodical in the way she analyzed it, giving Rieper the benefit of the doubt at every step, and she came to the conclusion, which I hope you'll agree with, that this claim is indefinite due to the failure to disclose adequate structure for the control means. Thank you, Your Honor. Thank you, Ms. Levickson. Mr. Young has the model time. Yes, thank you, Your Honor. First of all, with respect to the algorithm, I'd just like to point out that the district court rejected Mr. Smith, who was an expert in this case, rejected his testimony about the prose algorithm, and in reaching her conclusion that the prose algorithm did not... Let me step back. What she said was the prose algorithm simply restated the claimed function of the patent, and in reaching that conclusion, the district court relied on contrary to Sisvel, and she ruled contrary to Sisvel, which states that the adequacy of the disclosure and the specification, that is the algorithm here, must be viewed on the skilled artisan's perspective. Her section dealing with the algorithm, appendix 34 to 37, doesn't even mention ordinary skill, doesn't mention a skilled artisan, doesn't cite to anyone other than her own opinion. She completely ignores the testimony of our expert, who is the only person who provided any perspective of a skilled artisan. If we were to consider vacating and remanding here, what would be left for the district court to do upon a remand? It would have to fix its plain construction with respect to the corresponding structure. The corresponding structure in this case has to be dilemmatic one and dilemmatic two. Judge Rainey, you properly noted that if dilemmatic one is corresponding structure, then there is no indefiniteness problem, because you don't have to have that. The Serrano case establishes that. The Serrano case involved discrete logic or a microprocessor under software control, and in that case, this court did not require an algorithm. There's also not an algorithm necessary here, but there is one that exists in the specification for dilemmatic two, and Mr. Smith explained why. The court, in discounting that testimony, simply relied on her own view of the specification without considering the perspective of a skilled artisan. Additionally, in doing so, she recharacterized both the claimed function and the specification by using terms such as control process, signal reception, translate, signal production, none of which are in the patent anywhere, none of which were used by any of the parties or any of their witnesses. So the court did not rely in any way, shape, or form on a person having the perspective of a skilled artisan. I would simply note, Judge Cunningham, you asked earlier if dilemmatic one does, in fact, perform the claimed function, and it does. If you look at Appendix 2474, Deere's fact witness, Mr. Miller, states that it does in paragraph 8. I would also note that under Qualcomm, circuitry does not trigger an algorithm requirement, contrary to what Deere's counsel has indicated. And I see my time's out. Thank you. Both counsel, the case is submitted.